Dana L. Howell, NV Bar # 11607
Scott R. Pettitt, NV Bar # 11682
**MGM RESORTS INTERNATIONAL**
6385 S. Rainbow Blvd., Suite 500
Las Vegas, NV 89118
Telephone: (702) 692- 1937
Fax No.: (702) 669-4501
Emails: dhowell@mgmresorts.com
          spettitt@mgmresorts.com
*Attorneys for Defendants Aria Resort & Casino, LLC*
*and MGM Resorts International*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| YARITZA HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>ARIA RESORT & CASINO, LLC, a Nevada Limited Liability Company, MGM RESORTS INTERNATIONAL, a Delaware Corporation; and DOES I through X, inclusive, and ROE CORPORATIONS I-X, inclusive.<br><br>Defendants. | CASE NO.: 2:24-cv-00725<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendants ARIA RESORT & CASINO, LLC ("**Aria**") and MGM RESORTS INTERNATIONAL ("**MGMRI**") (collectively, "**Defendants**") hereby move to dismiss the

1

Complaint of Plaintiff Yaritza Hernandez ("**Plaintiff**") pursuant to Rules 12(b)(1) and 12(b)(6)[1] of the Federal Rules of Civil Procedure. This Motion to Dismiss ("**Motion**") is based on the attached Memorandum of Points and Authorities, the exhibits hereto, and Plaintiff's Complaint.

DATED: May 24, 2024

**MGM RESORTS INTERNATIONAL**

*/s/ Scott R. Pettitt*

Dana L. Howell, NV Bar # 11607
Scott R. Pettitt, NV Bar # 11682
*Attorneys for Defendants Aria Resort &
Casino, LLC and MGM Resorts International*

---

[1] Defendants recognize that *Fort Bend Cnty., Tex. v. Davis*, 139 S.Ct. 1843, 1850 (2019) views failure to exhaust administrative remedy defenses as being based on mandatory claim-processing rules, which are non-jurisdictional; accordingly, motions to dismiss on such bases fall under Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, to the extent that this Court considers federal and/or state law discrimination claims as jurisdictional, thereby falling under Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant also moves for dismissal on this basis. *See Salehian v. Nev. State Treasurer's Off.*, No. 2:21-cv-01512-CDS-NJK, 2022 U.S. Dist. LEXIS 135936, at *12 (D. Nev. 2022) ("For this Court to exercise subject matter jurisdiction over [plaintiff's] claims, [plaintiff] was required to 'exhaust [her] administrative remedies by either filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge'") (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002)); *Cabrera v. Seiu*, No. 2:18-cv-00304-RFB-DJA, 2020 U.S. Dist. LEXIS 88264, at *30 (stating that "*Fort Bend* provides no guidance" on "whether NRS 613.420 is a jurisdictional or mandatory claims-processing rule.")

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff Yaritza Hernandez ("Plaintiff" or "Hernandez") worked as a Cage Cashier with Defendant Aria Resort & Casino, LLC ("**Aria**" or the "**Company**").  Plaintiff brings five claims arising out of alleged employment discrimination and retaliation by Aria and MGM Resorts International ("**MGMRI**").  Nevertheless, Aria and MGMRI (collectively, "**Defendants**") are two separate and distinct legal entities.  MGMRI is not alleged to have been Plaintiff's employer during the relevant factual period, and none of the allegations in the First Amended Complaint ("**FAC**") pertain to the conduct of MGMRI or its agents. Moreover, even if MGMRI were her employer (which it was not), Plaintiff failed entirely to exhaust her administrative remedies as to MGMRI. Plaintiff's EEOC charge was specifically targeted and addressed to Aria.   MGMRI was deprived of the opportunity to respond to Plaintiff's allegations at the administrative stage.  Thus, as a matter of law, the First Amended Complaint must be dismissed in its entirety as to MGMRI.

Additionally, the remainder of Plaintiff's causes of action as to both named Defendants fail to state a claim upon which relief can be granted, and her Fourth and Fifth Causes of Action are specifically preempted by state and federal statutes. Plaintiff's FAC is devoid of the necessary factual allegations necessary to sustain her claims, and as such are subject to immediate dismissal.

**II.    RELEVANT PROCEDURAL HISTORY**

On January 4, 2023, Plaintiff filed a Charge of Discrimination against "Aria Resort & Casino LLC" with the EEOC (hereinafter referred to as "Charge"), alleging discrimination due to her disability and retaliation for engaging in protected activity in violation of the Americans with Disabilities Act ("**ADA**"). (FAC ¶ 33.)  Plaintiff did not file an administrative charge against MGMRI.  Indeed, in the Charge, Plaintiff's only employer was Aria, and the Charge includes allegations of conduct solely by Aria. After receiving Aria's position statement, the EEOC declined to pursue the charge and issued a right to sue letter on or about February 14, 2024.  (FAC ¶ 33.)

Plaintiff filed her Complaint on April 13, 2024, and she filed a First Amended Complaint on April 15, 2024.  The FAC sets forth five causes of action: (1) violation of the Family Medical

Leave Act; (2) discrimination in violation of the ADA; (3) discrimination and retaliation in violation of Nevada Revised Statutes § 613.330; (4) negligent infliction of emotional distress; and (5) negligent hiring, retention, and supervision.

## III.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that she was employed as a cage cashier at Aria from October 12, 2021 to May 1, 2023. (FAC ¶¶ 16, 30.) She alleges that she requested FMLA leave twice between October 2021 and March 2023 and that she was denied by Aria both times. (FAC ¶ 21.) Importantly, she does not allege that either denial was inappropriate or constituted an erroneous decision by her employer. Nor does she allege that she was eligible for or otherwise met the requirements to be eligible for FMLA leave at the time of these first two requests.[2]

Despite the denials for leave under FMLA, Plaintiff pleads that during the 17-month period between October 2021 and March 2023, "her ARIA managers accommodated [her] leave and attendance requests for cancer treatment and for cancer-related pain." (FAC ¶ 22.) Plaintiff alleges, however, that on or around March 9, 2023 she was notified by Human Resources that she was "subject to 'Suspension Pending Investigation' due to her attendance." (FAC ¶ 23.) Plaintiff alleges that *after she was already on suspension pending investigation,* on April 7, 2023, she provided Aria with "medical documentation." (FAC ¶ 24.) Plaintiff admits that she then requested FMLA a third time and was approved for "Intermittent" FMLA leave <u>as of April 13, 2023</u>. (FAC ¶¶ 25-27, emphasis added.). Curiously, she does not plead that the medical documentation she submitted nor the FMLA leave that she was approved for in April, retroactively applied to or covered her absences which led to her suspension pending investigation and ultimate separation for attendance.

Thus, pursuant to the timeline set forth in the FAC, FMLA leave was approved for the first time on April 13, 2023, *after* she had already been placed on suspension pending investigation for her attendance (which was ultimately the basis for her separation). Plaintiff alleges in

---

[2] Under the FMLA an employee must have worked for their employer at least 12 months and at least 1,250 hours over the previous 12 months. 29 USCS § 2611

contradictory form, however, that she "engaged in a protected activity under the FMLA when she used intermittent leave from <u>2021</u> through 2023." (FAC ¶ 37, emphasis added).  In fact, both factual contentions cannot be true – Plaintiff cannot be both denied FMLA leave and then also truthfully claim that she was using FMLA leave (that was denied) as the basis of her protected activity.

Plaintiff alleges that following her FMLA approval in April 2023, she "was not allowed to return to work" and that Aria ultimately terminated Plaintiff's employment on May 1, 2023, explaining that "she was terminated for attendance policy violations."  (FAC ¶¶ 28, 30-31.) Pursuant to Plaintiff's timeline, because Plaintiff was suspended on March 9, 2023 and "was not allowed to return to work" through the time of her termination, the attendance violations for which she was suspended and ultimately terminated necessarily predate her March 9, 2023 suspension. Thus, the factual allegations establish that she had not been granted FMLA leave at the time of her "attendance policy violations" which resulted in her termination.

On these facts, Plaintiff alleges that Aria and MGMRI discriminated against her by terminating her "due to her cancer disability" and retaliated against her "for engaging in protected activity by using FMLA leave." (FAC ¶ 32.)  Finally, Plaintiff avers that these very incomplete, contradictory, and very confusing allegations somehow make clear that Defendants' conduct was "intentional, willful, wanton, malicious, and outrageous."  (FAC ¶ 34.)

## IV.    ARGUMENT

### A.    LEGAL STANDARD

#### 1.    Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  (Fed. R. Civ. P. 12(b)(6).)  To survive dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" by alleging sufficient facts to raise a plaintiff's entitlement to relief beyond the speculative level.  (See Fed. R. Civ. P. 8(a)(2); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).)  This obligation requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.

1    Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim for

2    relief that is plausible on its face." (*Twombly*, 550 U.S. at 570.)

3          Though the party opposing a 12(b)(6) motion to dismiss is given the benefit of the doubt

4    in that his factual allegations are accepted as true, a court will not assume the truth of legal

5    conclusions merely because the plaintiff casts them in the form of factual allegations. (*Ashcroft*

6    *v. Iqbal*, 556 U.S. 662, 678-79 (2009).)  Additionally, the court should disregard conclusory

7    allegations, unwarranted deductions of fact, and unreasonable inferences. (*Spreewell v. Golden*

8    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).)  The factual allegations in a complaint "must

9    be enough to raise a right to relief above the speculative level," and must do more than "merely

10    create a suspicion [of] a legally cognizable right of action." (*Twombly*, 550 U.S. at 555 (citations

11    omitted).)

12          Because the line separating the plausible from the merely conceivable is not always a clear

13    one, the reviewing court is to "draw on its judicial experience and common sense" in making the

14    determination of what a plausible claim looks like. (*Iqbal*, 556 U.S. at 679.)  In *Iqbal*, the

15    Supreme Court provided a framework in which the reviewing court could exercise its experience

16    and common sense.  First, the court should determine which allegations merely state legal

17    conclusions and which are indeed factual assertions. Second, the court should determine whether

18    the factual assertions present a plausible entitlement to relief. (*Id*. at 679.)  In other words, the

19    court must determine whether the remaining factual content, if true, permits a reasonable

20    inference that the defendant is liable for the misconduct alleged. (*Id*. at 678-79.)  Where a

21    complaint relies on formulaic recitations of a claim or unsupported conclusions, its claims should

22    be dismissed.

23          Further, under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("**FRCP**"), a court

24    may dismiss entirely a complaint and/or claims that are not filed with the appropriate court and/or

25    administrative agency within the requisite filing periods (i.e., statutes of limitation, mandatory

26    claim-processing rules, etc.). *See* Fed. R. Civ. P. 12(b)(6); 42 U.S.C. § 2000e-5(e); *Fort Bend*

27    *Cnty., Tex. v. Davis*, 139 S.Ct. 1843, 1850 (2019) [hereinafter "*Fort Bend*"] (holding that

28    administrative "charge-filing instruction[s]" involve "mandatory" claim-processing rules, and

that "a court must enforce the rule if a party properly raise[s] it") (internal quotations omitted) (quoting *Ebehart v. U.S.*, 546 U.S. 12, 19 (2005)); *Ebehart*, 546 U.S. at 13, 17 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)) (affirming the dismissal of a pleading that was eleven days late "on the basis of untimeliness" because claim-processing rules are "inflexible"); *Mendoza v. Dejoy*, No. 21-cv-00991-H-JLB, 2021 U.S. Dist. LEXIS 202300, at *2, n.2 (D. Nev. Oct. 19, 2021) (quoting *Cloud v. Brennan*, 436 F. Supp. 1290, 1302 (N.D. Cal. 2020) (citing *Fort Bend.*, 139 S.Ct. at 1850 (stating that "the Supreme Court [in *Fort Bend*] recently clarified that Title VII's claim-processing rules [are] mandatory" and that "administrative exhaustion arguments [to dismiss complaints that failed to meet claim-processing rules fall] under Rule 12(b)(6)"); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999); *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 n.1, 1458-59 (9th Cir. 1990) (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).

### 2.    Dismissal Pursuant to FRCP 12(b)(1)

Because federal discrimination claims are jurisdictional, Defendants also move to dismiss Plaintiff's claims pursuant to FRCP 12(b)(1).  Defendants recognizes that *Fort Bend Cnty., Tex. v. Davis*, 139 S.Ct. 1843, 1850 (2019) ("*Fort Bend*") views a plaintiff's failure to exhaust administrative remedies as non-jurisdictional based on mandatory claim-processing rules thus falling under FRCP 12(b)(6).  Nevertheless, federal discrimination claims are jurisdictional, and because Plaintiff failed to exhaust her administrative remedies, Defendant also moves for dismissal on this basis.  (*See Salehian v. Nev. State Treasurer's Off.*, No. 2:21-cv-01512-CDS-NJK, 2022 U.S. Dist. LEXIS 135936, at *12 (D. Nev. 2022) ("For this Court to exercise subject matter jurisdiction over [plaintiff's] claims, [plaintiff] was required to 'exhaust [her] administrative remedies by either filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge'") (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002)).)

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's FAC, as it cannot survive the incurable defects set forth below.

B.    **MGMRI IS NOT A PROPER DEFENDANT BECAUSE IT WAS NOT PLAINTIFF'S EMPLOYER AND IS NOT RESPONSIBLE FOR ANY VIOLATION OF LAW OR HARM CAUSE BY PLAINTIFF'S EMPLOYMENT**

1.    **MGMRI was Not Plaintiff's Employer.**

MGMRI was not Plaintiff's employer after January 2014.  (FAC ¶ 15.)  Indeed, MGMRI is not mentioned in the entire FAC other than the irrelevant allegation that Plaintiff was employed by MGMRI from 1999 to 2014.  None of the alleged factual allegations of wrongdoing are even pled to have occurred between 1999 to 2014.  In reality, MGMRI is merely the parent entity of Aria.  Accordingly, as Aria's parent entity, MGMRI is not liable for the alleged wrong doings of its subsidiary.  (*EEOC v. Con-Way, Inc.* No. CV 06-1337-MO, 2007 U.S. Dist. LEXIS 66727, *4 (D. Or. Sept. 4, 2007) (internal citations omitted) ("[b]usinesses are allowed to incorporate and thereby isolate liabilities among separate entities … This concept of limited liability creates a strong presumption that a parent or affiliated company is not liable for employment violations of its subsidiary or affiliate").)  Only MGMRI employees are entitled to bring causes of action for wrongful termination and retaliation against MGMRI.  (See *Murray v. Principal Fin. Group, Inc.,* 613 F.3d 943, 944 (9th Cir. 2010).)

Thus, because Plaintiff's sole allegation as to MGMRI is that she was employed by MGMRI during a completely irrelevant time period, predating the alleged wrongdoing by Aria by almost a decade, she has not alleged sufficient facts to state any claim for relief as to MGMRI. All claims must be dismissed as they relate to MGMRI.

2.    **Plaintiff Has Not Exhausted her Administrative Remedies as to MGMRI.**

Even assuming, *arguendo*, that Plaintiff could establish that she was an employee of MGMRI (which she cannot), this Court must dismiss MGMRI because Plaintiff did not exhaust her administrative remedies against MGMRI.  The ADA adopts the same remedies as Title VII

and assigns responsibility for enforcement to the EEOC. *See*, 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5. The EEOC receives and investigates complaints of violations of ADA. *See*, 42 U.S.C. § 2000e-5(b). As with Title VII, an individual asserting a violation of the ADA must exhaust their administrative remedies by filing a charge of discrimination with the EEOC before the individual can file a complaint in state or federal court that alleges an ADA violation. See, 42 U.S.C. § 2000e-5(f).  If a plaintiff has not exhausted her administrative remedies by filing a timely Charge with the EEOC, her claim fails as a matter of law.  These administrative requirements serve the important purpose of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002).

In the instant case, Plaintiff cannot dispute that she only filed a Charge against Defendant Aria.  The Charge of Discrimination (which Plaintiff herself refers to and relies upon in the FAC at ¶¶ 33, 35, 40, 47, 51, and 56) makes clear that Plaintiff was "hired by Aria Resort & Casino LLC dba Aria Resort & Casino."  (*See* Ex. A.)[3]  No charge was ever filed against MGMRI, nor was MGMRI mentioned at all in Plaintiff's filed Charge.  Likewise, a right to sue letter was issued only as to Aria.  Plaintiff's Amended Complaint fails to demonstrate any exception to the general

---

[3] Plaintiff's EEOC Charge is attached to this motion as **Exhibit A**. Generally, when deciding a 12(b) motion to dismiss, a Court cannot consider materials outside of the pleading without converting the motion into a motion for summary judgment. *See* NRCP 12(b)(6); 12(d). However, because Plaintiff's Complaint specifically refers to and relies upon these documents, this Court may consider and take judicial notice of these documents. On a motion to dismiss, a document is not considered to be "'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citing *Townsend v. Columbia Operations*, 667 F.2d 844, 848–49 (9th Cir. 1982)). "[W]hen [the] plaintiff fails to introduce a pertinent document as part of [her] pleading, [the] defendant may introduce the exhibit as part of [its] motion attacking the pleading." *Branch*, 14 F.3d at 449 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762–63 (2d ed. 1990)). "Additionally, a court may take judicial notice of documents on which allegations in the complaint necessarily rely[.]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 U.S. Dist. LEXIS 41804, at *24–25 (N.D. Cal. June 9, 2006). For these reasons, courts in the Ninth Circuit have considered EEOC Charge of Discrimination documents when deciding on 12(b)(6) motions. *See e.g., Cloud v. Brennan*, No. 19-cv-04638-TSH, 2020 U.S. Dist. LEXIS 17213, at *26–27 (N.D. Cal. Feb. 3, 2020); *Pappas v. Nev. Dep't of Pub. Safety*, No. 3:18-cv-00098-MMD-WGC, 2018 U.S. Dist. LEXIS 186169, at *8 n.4 (D. Nev. Oct. 30, 2018).

rule requiring defendants to be named in the EEOC charge in order for administrative remedies to be considered exhausted against them. Furthermore, the EEOC could not have inferred that MGMRI violated the ADAAA because the allegations in the charge were narrowly and specifically lodged explicitly against Aria.

Further, the FAC makes no allegations that MGMRI had notice of or participated in the EEOC proceedings. As such, Plaintiff's discrimination and retaliation claims against MGMRI must be dismissed. *Freeman v. Oakland Unified School Dist.,* 291 F.3d 632, 636 (9th Cir. 2002); *EEOC v. Pioneer Hotel, Inc.,* Case No. 2:11-cv-1588-LRH-RJJ, 2012 U.S. Dist. LEXIS 63553, *8 (D. Nev. May 4, 2012) (dismissing parent company with prejudice because it "was not named in the charge of discrimination and charging party…was not employed by [the parent] in any capacity.").

### C.    PLAINTIFF'S FIRST CAUSE OF ACTION FOR VIOLATION OF FAMILY MEDICAL LEAVE ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As an initial matter, it is difficult for Defendants to even decipher what kind of alleged violation is being asserted under the FMLA. That alone is telling regarding the sufficiency of Plaintiff's allegations, pleadings, and factual assertions. Regardless of what type of FMLA violation claim Plaintiff is attempting to assert, the factual allegations set forth in the FAC do not establish any violation of the FMLA.

#### 1.    Plaintiff has not plead facts sufficient to support any violation of the FMLA under a theory of interference or denial of rights with regards to alleged FMLA requests in 2021 or 2023.

For an FMLA interference claim, Plaintiff must at the very least, plead that (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Moreover, she must plead that her request for FMLA-

protected leave constituted a negative factor in Defendant's decision to discharge her. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001).

With regards to the alleged FMLA requests in 2021 and 2023, nowhere in Plaintiff's FAC does she even allege that she met the eligibility factors for FMLA.  The Family and Medical Leave Act, 29 USCS § 2611, provides in relevant part that an "eligible employee… means an employee who has been employed— for at least 12 months by the employer with respect to whom leave is requested… and for at least 1,250 hours of service with such employer during the previous 12-month period."  Plaintiff's FAC alleges that she 1) was not employed by MGMRI at the time of her FMLA requests (FAC ¶ 15), and; 2) started her job at Aria on October 12, 2021 (FAC ¶ 16).  Thus, giving Plaintiff the benefit of every doubt in her FAC as to timing factors, at the *earliest* Plaintiff was eligible for FMLA leave on October 12, 2022, 12 months after she began her position at Aria.[4]  (FAC ¶ 16.)  However, time in position is not the only eligibility factor for FMLA.  Indeed, she must also have worked for at least 1,250 hours of service at Aria during that previous 12-month period.  At no time does Plaintiff allege facts sufficient to establish that she was entitled to FMLA leave, nor does she plead when (or even if) she met the 1,250 hours of service requirement.  In fact, nowhere in Plaintiff's FAC does she even alleged the conclusory statement that she was "eligible for FMLA leave" or that she was "entitled to FMLA leave."

Further, Plaintiff does not allege that she provided sufficient notice of her intent to take leave, or that Defendant denied her FMLA benefits *to which she was entitled*.  Nor has she actually plead facts establishing that her request for FMLA leave was a factor in Defendant's decision.  Accepting all of the facts asserted in the FAC as true, at best, Plaintiff has alleged that she was placed on Suspension Pending Investigation ("SPI") for attendance on March 9, 2023 (FAC ¶ 23).  Thereafter, and for the first time, does Plaintiff allege that on April 7, 2023 she submit paperwork necessary for FMLA (which was then approved as of April 13, 2023) (FAC ¶¶ 24-26).  In other

---

[4] The statute of limitations for an FMLA claim is 2 years, unless the violation is "willful."  29 CFR § 825.400(b).  Plaintiff has not plead facts to support 'willful' violations and therefore Plaintiff's allegations related to 2021 FMLA claims are time barred and should be dismissed.

words, based on Plaintiff's own alleged (and factually pleaded timeline), Plaintiff was placed on SPI (which resulted in her termination) *before* she (at best) submitted medical paperwork for and qualified for FMLA which was approved.  She does not allege that she provided FMLA documentation that would cover the absences she incurred *prior to* being approved to use FMLA.

The reason Plaintiff has not plead facts sufficient to establish an FMLA violation is not by accident – is because Plaintiff cannot truthfully and factually plead facts that would support an FMLA claim.  The simple truth is she was not eligible for FMLA leave until she submitted and was approved for it on April 13, 2023.  (FAC ¶ 26).  That approval came *after* her attendance infractions which resulted in her being placed on SPI, and she does not plead (because she factually cannot) that her approved FMLA on April 13, 2023 covered her *already incurred* absences.

Plaintiff has not plead that she was eligible for FMLA on the 'first two instances' in 2021 and 2023 when she alleges she asked for it.  In fact, when Plaintiff was finally eligible for FMLA, she was approved for FMLA time (a fact which she pleads in her FAC.)  There was no interference or wrongful denial of FMLA.  Plaintiff has not plead facts sufficient to sustain a claim for FMLA violation, and she certainly has not plead facts which (even if accepted as true) would establish that Defendant's adverse employment action was because she sought and was approved for FMLA leave on April 13, 2023.

> 2. **Plaintiff has not plead facts sufficient to support a claim for FMLA retaliation.**

To prevail on an FMLA retaliation claim, Plaintiff must present a prima facie case under the *McDonnell Douglas* burden-shifting framework that (1) she was engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal link between the two. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012); *Cornwell v. Microsoft Corp.*, 192 Wash. 2d 403, 411, 430 P.3d 229 (2018). Here, Plaintiff cannot demonstrate even the first element. Plaintiff alleges that "she engaged in protected activity under the FMLA when she used intermittent leave from 2021 through 2023." (FAC ¶ 37).  But this cannot be considered protected activity.  "[I]f an

employee fails to show that [s]he was eligible under [the FMLA], then [s]he cannot show, as a matter of law, that [s]he was engaged in protected activity.  An employer cannot be liable for retaliation under [the FMLA] where the employer terminates an employee who is not entitled to [FMLA] benefits." *Hayes v. Deluxe Mfg. Operations LLC*, 2018 U.S. Dist. LEXIS 67373 (2018), citing *Beck v. Augusta*, No. CV 112-188, 2015 U.S. Dist. LEXIS 25718, 2015 WL 900306, at *8 (S.D. Ga. Mar. 3, 2015) (citations omitted).

In this case, not only has Plaintiff failed to demonstrate (or even allege) that she was eligible for FMLA leave at the time of her alleged protected activity from 2021 to 2023, but her own allegations clearly demonstrate that she was not eligible for leave during the entire first year of that time.  When she ultimately requested FMLA leave in April 2023, (when she was eligible) her leave was granted.  This does not retroactively excuse her attendance infractions that predate her valid and approved FMLA leave.

Further, Plaintiff has not alleged that she engaged in "protected activity" which can be asserted as an FMLA retaliation claim.  Pursuant to 29 U.S.C. § 2615, anti-retaliation claims protects employees who: (1) oppose or complain about an unlawful practice under the [FMLA]; (2) file any charge or initiate a proceeding under the [FMLA]; or (3) give information or testify in an inquiry related to a right protected under the FMLA.  *See* 29 U.S.C. § 2615.  Plaintiff's complaint is devoid of any factual allegations that would support a retaliation claim under the FMLA.  Accordingly, Plaintiff has not stated a claim for relief under the FMLA upon which relief can be granted.  Plaintiff's first cause of action should be dismissed.

## D.   PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION FOR DISCRIMINATION UNDER  THE ADA AND NRS § 613.330 FAIL TO STATE A CLAIM

Plaintiff fails to allege sufficient facts to state a claim for discrimination under either the Americans with Disabilities Act (ADA) or NRS § 613.330.  In support of her disability discrimination claims plaintiff presents two theories.  First, she alleges that "ARIA did not make

reasonable accommodations to the known physical limitations of Plaintiff." (FAC ¶ 44). Second, Plaintiff alleges that ARIA "terminated her because of her disability."

Plaintiff's first theory, failure to accommodate, is undercut by her own factual allegations. Plaintiff's sole allegation relating to a request for accommodations consists of the following: "her ARIA managers **accommodated** HERNANDEZ' leave and attendance requests for cancer treatment and for cancer-related pain." (FAC ¶ 22, emphasis added). Thus, while an employer's refusal to allow a reasonable accommodation may be grounds for a disability discrimination claim, Plaintiff's factual allegations do not demonstrate an entitlement to relief. Plaintiff has not alleged a single accommodation that was requested and not accommodated. To the contrary, Plaintiff candidly concedes that her leave and attendance requests relating to her cancer treatment and pain were accommodated.

On the second theory, Plaintiff merely concludes, without any supporting factual allegations, that she was terminated "because of her disability." (FAC ¶ 44). "To establish a prima facie case for disability discrimination under the ADA, a plaintiff must show that: (1) she is disabled, (2) she is qualified to perform the essential functions of his position, and (3) she suffered an adverse employment action because of her disability. *Mickealson v. Cummins, Inc.*, 792 Fed. Appx. 438, 440 (2019). Plaintiff's Complaint fails to state facts which, if true, would demonstrate that she was terminated because of her disability. Plaintiff's allegations in this regard constitute nothing more than legal conclusion and conjecture which are insufficient to sustain a claim upon which relief can be granted.

### E. THE RETALIATION CLAIM INCLUDED IN PLAINTIFF'S THIRD CLAIM FOR RELIEF FAILS TO STATE A UNDER NRS § 613.330.

First, a claim for retaliation under NRS § 613.330 simply does exist. Plaintiff's FAC bases its retaliation claim entirely upon this statute, which neither mentions nor provide recourse for employment retaliation. For the reason alone it should be dismissed.

Additionally, even if Plaintiff had brought a retaliation claim under a statute that pertains to retaliation, it would still be subject to dismissal because she fails to allege facts that would

support a claim for retaliation. The Nevada Supreme Court has explained that NRS 613.340 is Nevada's anti-retaliation statute. *Pope v. Motel 6*, 121 Nev. 307, 312, 114 P.3d 277, 281 (2005). The statute provides that

> It is an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment… **because he has opposed any practice** made an unlawful employment practice by NRS 613.310 to 613.435, inclusive, **or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing** under NRS 613.310 to 613.435, inclusive.

Federal statutes provide similar protections for employees who take actions to enforce non-discrimination policies. For instance, the ADA "prohibits, inter alia, retaliation against any individual who has asserted rights under the ADA." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *see* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual… made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). Similarly, Title VII of the Civil Rights Act of 1964 forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by Title VII, or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Plaintiff has failed to plead facts which, if true, would entitle her to relief. Under state and federal laws a plaintiff must establish the following elements: (1) she engaged in statutorily protected activity; (2) her employer took a materially adverse employment action against her; and (3) the protected activity and adverse job action are causally connected. *Smiley v. Cassano*, 2012 U.S. Dist. LEXIS 39615, at *12 (S.D.N.Y. Mar. 20, 2012).

In this case, Plaintiff does not get beyond the first element. Plaintiff fails to allege that she participated in a protected activity and fails to allege any facts that constitute a protected activity.

A "[p]rotected activity typically 'refers to action taken to protest or oppose statutorily prohibited discrimination.'" *Smiley* at *12, citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000); *accord Treglia v. Town of Manlius*, 313 F.3d 713, 719-20 (2d Cir. 2002) ("[Plaintiff's attempts to assert his rights against discrimination are protected activities, including his alleged complaints to [his supervisor], his ultimate filing of federal and state administrative charges . . . and his efforts with the NYDHR to investigate his claims."); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("[F]iling of a complaint [alleging discrimination] with the EEOC is an activity protected by the ADA.").

Plaintiff's allegations of retaliation are not based upon steps taken by the Plaintiff to protest or oppose discrimination (e.g. filing a complaint). Thus, Plaintiff's cause of action for "retaliation" is indistinguishable from her cause of action for discrimination. The alleged facts do not fit a cause of action for retaliation. Accordingly, Plaintiff's "Retaliation" claim should be dismissed.

F.    **PLAINTIFF'S FOURTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND FIFTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION, AND SUPERVISION ARE PREEMPTED BY STATE AND FEDERAL STATUTES**

1.    **Plaintiff's Common Law Claims are Preempted by Employment Statutes.**

A plaintiff is preempted from bringing common law tort claims where an adequate statutory remedy is provided. It **is well-settled in Nevada that** NRS § 613.330 *et seq.* provides the exclusive remedy for redress of claims such as Plaintiff's premised on unlawful employment practices. Both the Nevada Supreme Court as well as the District Court for the District of Nevada have held that tort claims premised on discrimination in employment are remedied under the statute. *See, e.g., Sands Regent v. Valgardson*, 105 Nev. 436, 439-40, 777 P.2d 898 (Nev. 1989); *Western State Minerals Corp. v. Jones*, 107 Nev. 704 n.10, 819 P.2d 206 (Nev. 1991); *Powell v. Las Vegas Hilton Corp.*, 841 F. Supp. 1024, 1031 (D. Nev. 1992); *Brinkman v. Harrah's Operating Co., Inc.*, 2:08-cv-00817-RCJ-PAL, 2008 U.S. Dist. LEXIS 123992 at*3 (D. Nev. October 16, 2008).)

Relying on the standards laid out by the Nevada Supreme Court,[5] this Court has applied the same rationale to dismiss common law tort claims when such claims were premised upon discriminatory conduct covered by state or federal statutes with adequate remedies. (*See, e.g.*, *Jackson v. Universal Health Servs.*, No. 2:13-cv-01666-GMN-NJK, 2014 U.S. Dist. LEXIS 129490 (D. Nev. Sept. 15, 2014) (dismissing negligent hiring, supervision and training claim based on alleged race and gender discrimination when there is an exclusive statutory remedy for these claims); *Westbrook v. DTG Operations, Inc.*, No. 2:05-cv-00789-KJD-PAL, 2007 U.S. Dist. LEXIS 14653, at *19 (D. Nev. Feb. 28, 2007) (dismissing negligence per se claim based on violations of the ADA); *Colquhoun v. BHC Montevista Hospital, Inc.*, No. 2:10-cv-0144-RLH-PAL, 2010 U.S. Dist. LEXIS 57066 (D. Nev. June 9, 2010) (dismissing negligent hiring, supervision and training claim based on alleged discrimination, stating "the fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training or supervision"); *Lund v. J.C. Penney Outlet*, 911 F. Supp. 442 (D. Nev. 1996) (dismissing plaintiff's public policy wrongful discharge claim concluding that an available statutory remedy existed under federal law in the ADA).)

### 2. Plaintiff's Common Law Claims for Emotional Injury are Preempted by the NIIA.

The Nevada Industrial Insurance Act ("NIIA") provides that "the rights and remedies provided in chapters 616A to 616D, inclusive, of NRS for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive." NEV. REV. STATUTE 616A.020(1); *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 839 (Nev. 2000). In other words, the NIIA preempts employees from bringing negligence claims and claims of intentional acts sounding in negligence against employers. *See Conway*, 8 P.3d at 874.

---

[5] In *Sands Regent v. Valgardson*, the Nevada Supreme Court held that employees cannot maintain separate tort claims premised upon discriminatory conduct that are subject to the comprehensive statutory remedies provided by NRS 613.310 *et seq*.  (105 Nev. 436, 440, 777 P.2d 898, 900 (1989)).  The court subsequently clarified and strengthened this holding in *D'Angelo v. Gardner*, 107 Nev. 704 (1991), explicitly confirming that the statutory scheme set forth in NRS 613.310 *et seq*. was the sole remedy available for claims of discrimination, displacing potentially overlapping common law torts.

It is well-established in Nevada that the terms and conditions of the NIIA provide the "exclusive remedy" to any employee who is injured in the course and scope of her employment. *Conway v. Circus Circus Casinos*, 116 Nev. 870, 874 (2000) (exclusive remedy provision of NIIA barred plaintiff's negligence and other common law tort claims); *see also Russo v. Clearwire US, LLC*, No. 2:12-CV-01831-PMP-VCF, 2013 U.S. Dist. LEXIS 61440, at *25 (D. Nev. April 30, 2013) (dismissing a negligent training and supervision claim because it was barred by the exclusive remedy provision of the NIIA). In enacting the NIIA, the Nevada legislature created a comprehensive system of compensation for employees who are injured on the job. Under this system of workers' compensation, the employer is relieved of all liability for accidental injuries arising out of and in the course of employment, including stress-related injuries. *See* NEV. REV. STAT. §§ 616A.020(1)-(2), 616B.612(4), 616C.180(1). Allegations of negligent injury and intentional acts sounding in negligence are subject to the NIIA.

Here, Plaintiff alleges that she "has suffered, and will continue to suffer, emotional distress and psychological trauma impairing her daily life" as a result of Defendants' negligence. (FAC ¶ 60.) These alleged emotional/stress-related injuries are based on behavior and conduct that occurred during her employment. Accordingly, Plaintiff's claims are preempted by the NIIA— which is Plaintiff's exclusive remedy for his alleged harm sustained in the course and scope of his employment. NEV. REV. STAT. 616A.020(1); *Conway*, 8 P.3d at 839; *Russo*, 2013 U.S. Dist. LEXIS 61440, at *25. Accordingly, Plaintiff's emotional distress claims should be dismissed because they are preempted by the NIIA.

## G.  PLAINTIFF'S FOURTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ALSO FAILS TO STATE CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff's Fourth Cause of Action is for Negligent Infliction of Emotional Distress ("NIED"). (FAC ¶¶ 51-55.) Plaintiff's FAC fails to state a cause of action for NIED, however, because NIED claims are only available to bystanders—not to direct victims. (*Armstrong v. Reynolds*, 22 F.4th 1058, 1082 n.5 (9th Cir. 2021); *Shoen v. Amerco, Inc.*, 748, 896 P.2d 469 (Nev.

1  1995); *Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01584-APG-GWF, 2016 U.S.

2  Dist. LEXIS 29665, at *4 (D. Nev. Mar. 7, 2016).)

3          Outside of the employment discrimination context—because NIED claims are preempted—

4  some cases have held that in order to state a claim for NIED, a direct (non-bystander) victim of

5  NIED is required simultaneously allege IIED, while concurrently pleading facts sufficient to show

6  that such conduct was negligent.  (*See Abrams v. Sanson*, 458 P.3d 1062 (2020), recently described

7  *Shoen* as "allowing for negligent infliction of emotional distress [for non-bystanders] if the acts

8  arising under intentional infliction of emotional distress *were committed negligently*."  (*Armstrong*,

9  22 F.4th at 1082, n.5 (quoting 458 P.3d at 1070) (emphasis added).)  In any event, Plaintiff's FAC

10  does not allege a claim for IIED and does not contain factual allegations sufficient to support the

11  elements of a cause of IIED.[6]  Indeed, Plaintiff could not state claim for IIED because the

12  "termination of employees, even in the context of a discriminatory [employment] policy does not

13  in itself amount to extreme and outrageous conduct. . . ."  (*Hirschhorn v. Sizzler Restaurants*

14  *International, Inc*., 913 F.Supp. 1393, 1401 (D. Nev. 1995); *see also Welder v. Univ. of So. Nev*.,

15  833 F. Supp. 2d 1240, 1242 (D. Nev. 2011) ("[a] simple pleading of personnel management activity

16  is insufficient to support a claim of [IIED], even if improper motivation is alleged." (emphasis

17  added)); *see also Cox v. Keystone Carbon Co*., 861 F.2d 390, 395 (3d Cir. 1988) citing *Brieck v.*

18  *Harbison-Walker Refractories*, 624 F.Supp. 363, 367 (W.D. Pa.1985) ("while loss of employment

19  is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot

20  provide a basis for recovery for IIED.)

21          Accordingly, Plaintiff's Fourth Cause of Action for NIED fails to support a claim upon

22  which relief can be granted and should be dismissed.

23

24

---

25  [6] IIED requires a showing of (1) extreme and outrageous conduct with either the intention of, or
    reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or

26  extreme emotional distress and (3) actual or proximate causation.  (*Olivero v. Lowe*, 995 P.2d 1023,
    1025 (Nev. 2000); *see also Luckett v. Doumani*, 121 Nev. 44, 110 P.3d 30 (2005).)  "[E]xtreme and

27  outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as
    'utterly intolerable in a civilized community.'" (*Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953

28  P.2d 24, 26 (1998) (quoting California Book of Approved Jury Instructions No. 12.74).)

1

2

### H.  PLAINTIFF'S FIFTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION, AND SUPERVISION ALSO FAILS TO STATE CLAIM UPON WHICH RELIEF CAN BE GRANTED

3

4

5

6

7

8

9

10

11

12

13

Finally, Plaintiff's Fifth Cause of Action for negligent hiring, retention, and supervision also fails to state a claim upon which relief can be granted.  Specifically, Plaintiff pleads no facts to support that Defendants breached their duty to Plaintiff "by hiring, training, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities" and that "the breach was the cause of [P]laintiff's injuries."  (Peterson v. Miranda, 57 F. Supp. 3d 1271, 1280 (D. Nev. 2014).)  Plaintiff does not allege that Defendants failed to properly screen employees it hired, that it failed to ensure that employees were suitable for their positions, or that it knew or should have known about an employee's dangerous propensities. To the contrary, to the extent Plaintiff alleges any wrongful conduct, the wrong she alleges lies in her termination.  Thus, it relates to the conduct of her employer—not an employee—and cannot support a claim for negligent hiring, training, or supervision.

14

15

16

17

18

19

20

21

22

23

24

Furthermore, a claim for negligent hiring, training, or supervision contemplates liability for an employer based on injuries caused by a negligently managed employee.  *See* Restatement of Employment Law § 4.04 (Am. Law Inst. 2015) ("Except to the extent precluded by a workers'-compensation statute or other law, an employer is subject to liability for the harm caused an employee by negligence in selecting, retaining, or supervising employees or agents whose tortious acts resulted in the harm.").  To establish a claim for negligent hiring, training, retention, or supervision of employees, a plaintiff must show (1) a duty of care defendant owed the plaintiff; (2) breach of "that duty by hiring, training, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages." (*Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1280 (D. Nev. 2014).)

25

26

27

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." (*Hall v. SSF, Inc.*, 112 Nev. 1384, 1392, 930 P.2d 94, 98 (1996) (internal quotation marks omitted).)

28

Beyond hiring, an employer also "has a duty to use reasonable care in the training, supervision, and retention of [its] employees to make sure the employees are fit for their positions." (*Id.* at 1393, 930 P.2d at 99.) There is no common law duty to hire and/or train employees so that they are aware of the complexities of ADA, FMLA, and/or employment discrimination law under state and federal standards.

Here, Plaintiff does not allege that Defendants failed to properly screen employees it hired, that it failed to ensure that employees were suitable for their positions, or that it knew or should have known about an employee's dangerous propensities such that the employees were not a sufficient fit for their positions. To the extent Plaintiff alleges wrongful conduct, the wrong that she alleges was perpetrated (if any) lies in her termination. That is, it relates to the conduct of *the employer*—not an employee—and so does not support a claim for negligent hiring, training, or supervision.

Accordingly, Plaintiff's Fifth Cause of Action fails to state a claim for negligent hiring, training, or supervision upon which relief may be granted.

I.    **PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MUST BE DISMISSED.**

Although not listed as a cause of action in her FAC, Plaintiff does include "punitive damages" in her prayer for relief. Whether a complaint pleads sufficient facts for a punitive damage claim is a question of law for the court to decide. *See Austin v. C&L Trucking, Inc.*, 610 F. Supp. 465, 1985 U.S. Dist. LEXIS 21219 (1985); see also *Coughlin v. Tailhook*, 818 F. Supp. 1366 (1993). Plaintiff's claims fail as a matter of law because Plaintiff fails to allege sufficient facts to support a claim for punitive damages under either Nevada law or the ADA.

Moreover, "punitive damages are not available for violation of the Family and Medical Leave Act ("FMLA")," Plaintiff's first cause of action. *Clemens v. Prot. One, Inc.*, 2010 U.S. Dist. LEXIS 35636, *7-8 (*citing* 29 U.S.C. § 2601, et seq. 29 U.S.C.A. § 2617; *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n. 6 (9th Cir. 2003) ("The FMLA only provides for compensatory

damages and not punitive damages.")  Punitive damages are similarly not available for retaliation claims under the ADA or state law.  *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009).

### 1. Plaintiff Fails to Meet the Nevada Standard for Punitive Damages

NRS 42.005 explains that punitive damages are designed to deter conduct that is oppressive, fraudulent or malicious and causes injury to another person. The Nevada Supreme Court defines oppression, fraud, and malice as follows:

> Oppression means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard for the right of the person. Fraud means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights or property or to otherwise injure another person. Express malice is conduct which is intended to injure a person; implied malice is despicable conduct which is engaged in with a conscious disregard of the rights of others.

> *Bongiovi v. Sullivan,* 122 Nev. 556, 581, 138 P.3d 433, 450-51 (2006) (internal punctuation and footnotes omitted).

Nevada law imposes additional requirements for claims of punitive damages when, as here, such claims are brought against an employer based upon an employee's alleged wrongful action.  NRS 42.007(1) provides in pertinent part:

> An employer may be liable for punitive damages based upon an employee's wrongful actions if:

> (a) The employer had advance knowledge that the employee was unfit for the purposes of the employment and employed him with a conscious disregard of the rights or safety of others;

> (b) The employer expressly authorized or ratified the wrongful act of the employee for which the damages are awarded; or

> (c) The employer is personally guilty of oppression, fraud or malice, express or implied.

> If the employer is a corporation, the employer is not liable for exemplary or punitive damages unless the elements of paragraph (a), (b) or (c) are met by an officer, director or managing agent of the

corporation who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation.

The allegations set forth in Plaintiff's First Amended Complaint are insufficient to state a claim for punitive damages under any of these grounds. First, Plaintiff states no facts to support a conclusion that any officer, director or managing agent had advance knowledge that any employees were unfit for their employment.  Second, Plaintiff states no facts to support a conclusion that any officer, director or managing agent expressly authorized or ratified any wrongful act of an employee.  Finally, there are no facts alleged to support a conclusion that any officer, director or managing agent is personally guilty of oppression, fraud or malice.

Moreover, Plaintiff presents no facts to support a conclusion that any Defendant acted with malice or oppression.  Plaintiff ultimately concedes that she was terminated because she was found to have committed "attendance policy violations."  (FAC ¶¶ 28, 30-31.) While Plaintiff may disagree that such violations occurred, the ordinary employment act of terminating someone for policy violations cannot be construed as rising to the level of oppression and malice.  Thus, Plaintiff has not set forth sufficient factual allegations to support a claim for punitive damages.

### 2. Plaintiff Fails to Meet the Punitive Damages Standards under the ADA.

Plaintiff also fails to satisfy the pleading requirements applicable to Title VII and ADA claims for punitive damages. Plaintiffs seeking punitive damages must "make a showing beyond the threshold level of intent required for compensatory liability[,]" including "evidence of conduct more egregious than intentional discrimination[.]"  *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998).  Punitive damages are proper under Title VII "where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights." *Id*.  The plaintiff must demonstrate that the defendant "almost certainly knew that what he was doing was wrong and subject to punishment." *Id.,* 140 F.3d at 1304, (citing *Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir. 1985)).

As described above, the FAC fails to set forth allegations that would support even a basic claim for intentional discrimination under the ADA.  Thus, the Amended Complaint certainly does not set forth allegations of willful or reckless conduct that is more egregious than intentional discrimination.  Plaintiff does not identify anyone who acted willfully and egregiously or with reckless indifference to her civil rights.  Nor does he sufficiently allege a factual basis to conclude that they acted with intent or indifference to her federal rights.  Thus, Plaintiff's request for punitive damages under the ADA should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully requests that Plaintiff's FAC be dismissed with prejudice in its entirety against Defendant MGMRI. Further, each of Plaintiff's cause of action are deficient and must be dismissed as to all parties.

DATED:  May 24, 2024                              Respectfully submitted,

                                                  **MGM RESORTS INTERNATIONAL**

                                                  */s/ Scott R. Pettitt*

                                                  _____
                                                  Dana L. Howell, NV Bar # 11607
                                                  Scott R. Pettitt, NV Bar # 11682
                                                  *Attorneys for Defendants Aria Resort &*
                                                  *Casino, LLC and MGM Resorts International*

<u>**CERTIFICATE OF SERVICE**</u>

       I HEREBY CERTIFY that on May 24, 2024, I electronically filed a copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF, to the persons listed below:

RYAN ALEXANDER
RYAN ALEXANDER, CHTD.
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102

 *Attorney for Plaintiff*

                      **MGM RESORTS INTERNATIONAL**

                      */s/ Yvette Jauregui*
                      Yvette Jauregui
                      *Employee of MGM Resorts International*

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 487-2023-01773 |
| | FEPA | |

| Nevada Equal Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(Indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Yaritza Hernandez | (702) 984-9805 | 1977 |

**Street Address**

4800 East Charleston Boulevard APT 2

LAS VEGAS, NV 89104

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Aria Resort & Casino LLC DBA Aria Resort & Casino | 501+ Employees | |

**Street Address**

3730 South Las Vegas Blvd

LAS VEGAS, NV 89158

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |
| Disability, Retaliation | 01/01/2023 — 03/06/2023 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about October 12, 2021, I was hired by Aria Resort & Casino LLC dba Aria Resort & Casino as a casino cashier. My last job title was the same. In or around January 2023 I informed Respondent of my medical condition and need for leave. Subsequently, in or around March 2023, I was suspended from my position without pay. On or about March 6, 2023 I was discharged.

I believe I was discriminated against due to my disability and retaliated against for engaging in protective activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| **Digitally Signed By: Ms. Yaritza Hernandez** | |
| **07/26/2023** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

Page 1 of 2