# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

YARITZA HERNANDEZ,

   Plaintiff,

  v.

MGM RESORTS INTERNATIONAL, et al.,

   Defendants.

Case No. 2:24-cv-00725-GMN-BNW

**ORDER AND REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion to Dismiss. ECF No. 13. Plaintiff opposed (ECF No. 20), and Defendants replied. ECF No. 21. Because the First Amended Complaints lacks sufficient factual allegations to plausibly state claims for FMLA interference; negligent infliction of emotional distress; negligent hiring; and negligent training, retention, and supervision, the Court recommends granting the Motion in part and dismissing Plaintiff's first, fourth, and fifth causes of action. But given that Plaintiff could allege additional facts that would entitle her to relief, the Court recommends that she be granted leave to amend her claims. As to Plaintiff's remaining claims—which plausibly allege disability discrimination in violation of the ADA and state law—the Court recommends denying Defendant's Motion in part and allowing the claims to proceed.

Based on Plaintiff's counsel's recent withdrawal and Plaintiff's current pro se representation, the Court refers the case to the Pro Bono Program. The Court also recommends that the case be stayed pending appointment of pro bono counsel because Plaintiff has surviving claims and may wish to file an amended complaint.

**I. BACKGROUND**

Plaintiff Yaritza Hernandez sues Aria,[1] her former employer, alleging discrimination and retaliation in violation of the FMLA, the ADA, and state law, as well as negligent infliction of

---

[1] Plaintiff also named MGM Resorts International in her suit but has since agreed to dismiss it as a defendant. *See* ECF No. 20 at 1.

emotional distress and negligent hiring, retention, and supervision. *See generally* ECF No. 6. Plaintiff's claims arise out of absences she took from work for breast cancer treatment and cancer-related pain. *See id.* at ¶¶ 19–32. She alleges that she received her breast cancer diagnosis before she began working at Aria in October 2021 and that Aria knew about her condition. *Id.* at ¶¶ 16, 19–20. According to Plaintiff, though Aria twice denied her requests to take FMLA leave, her supervisors allowed her to take absences for treatment. *Id.* at ¶¶ 21–22. Later, Plaintiff alleges, Aria approved her third request for Intermittent FMLA leave in April 2023 but fired her mere weeks later, citing attendance policy violations. *Id.* at ¶¶ 25–32.

Following her termination, Plaintiff submitted disability discrimination charges to the Nevada Equal Rights Commission, which were later taken over by the Equal Employment Opportunity Commission. *Id.* at ¶¶ 9–10. The EEOC issued Plaintiff a right-to-sue letter on February 14, 2024. *Id.* at ¶¶ 11, 33. Plaintiff filed suit two months later. ECF No. 1.

Defendants move the Court to dismiss all Plaintiff's causes of action for failure to state a claim. ECF No. 13. Plaintiff opposes, arguing that she alleges sufficient facts to state plausible claims. ECF No. 20. After the Motion was fully briefed and the parties participated in an Early Neutral Evaluation, Plaintiff's counsel withdrew from the case. ECF No. 26. Plaintiff has represented herself pro se since. *See, e.g.*, ECF Nos. 28, 31–32, 34.

## II.   LEGAL STANDARD

A pleading must contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, a properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis in original).

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept all well-pled factual allegations in the complaint as true, recognizing that legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678–79. Mere recitations of a claim's elements, supported by only conclusory statements, are insufficient. *Id.* The court must then consider whether the well-pled factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A claim that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed. *Twombly*, 550 U.S. at 570.

## III. ANALYSIS

Plaintiff's First Amended Complaint brings five causes of action: (1) Violation of the Family Medical Leave Act; (2) Discrimination under the Americans with Disabilities Act; (3) Discrimination and Retaliation under NRS. § 613.330; (4) Negligent Infliction of Emotional Distress; and (5) Negligent Hiring, Retention, and Supervision. *See generally* ECF No. 6. Defendants seeks dismissal of all claims because they contend the FAC contains conclusory assertions devoid of sufficient factual allegations. ECF No. 13. They also assert that Plaintiff's common law tort claims are preempted by state statutes that provide exclusive remedies. *Id.* at 16–18. Plaintiff maintains that her causes of action are sufficiently pled and that her tort claims are not preempted. ECF No. 20.

Defendants also move to dismiss MGM Resorts International from the suit because Plaintiff solely alleges misconduct by Aria and did not name MGM in her EEOC complaint. ECF No. 13 at 7–10. Plaintiff agrees to its dismissal. ECF No. 20 at 1. The Court therefore recommends that MGM be dismissed with prejudice. As to the remaining claims and arguments, the Court addresses each, in turn, below.

### A. Claim 1: FMLA Interference

Plaintiff's first cause of action alleges violations of the FMLA. ECF No. 6 at ¶¶ 35–39. The FMLA creates two interrelated substantive rights for employees. *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). First, employees have the right to take up to twelve weeks of leave for certain family- and medical-related reasons. 29 U.S.C. § 2612(a). Second, employees who take FMLA leave have the right to be restored to the same or equivalent position when they return to work. *Id.* § 2614(a). Courts recognize two separate causes of action for FMLA claims: (1) interference or (2) retaliation. *Bachelder*, 259 F.3d at 1124.

An employee brings an interference claim when she alleges a violation of § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting 29 U.S.C. § 2615(a)(1)). By contrast, an alleged violation of § 2615(a)(2)—under which it is "unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice" protected by the FMLA—is known as a retaliation claim. *Id.* (quoting 29 U.S.C. § 2615(a)(2)).

Defendants argue that Plaintiff fails to state a claim for relief under either theory. ECF No. 13 at 10–13. Although the FAC does not set forth which theory Plaintiff pursues—and her Opposition too does not clarify—the Ninth Circuit construes claims alleging that employers have "visit[ed] negative consequences on an employee simply because [s]he has used FMLA leave" as interference claims, rather than retaliation claims. *Bachelder*, 259 F.3d at 1124. The Court therefore construes Plaintiff's first cause of action as an FMLA interference claim because she alleges that Aria terminated her for taking FMLA leave. *See* ECF No. 6 at ¶ 32.

FMLA interference can take many forms, including refusing to authorize FMLA leave, discouraging an employee from taking such leave, using the taking of FMLA leave as a negative factor in employment actions, and mischaracterizing FMLA leave as personal leave. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133, 1135 (9th Cir. 2003). "It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that

4

determination, and to inform the employee" of her entitlements. *Id.* at 1134 (citation omitted). The "linchpin" of an interference claim is the right to reinstatement because "the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Sanders*, 657 F.3d at 778 (internal quotations and citations omitted). "Thus, evidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights." *Id.*

To assert a prima facie case for FMLA interference, an employee must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Id.* An employee can prove this claim by using either direct or circumstantial evidence—or both. *Bachelder*, 259 F.3d at 1125. The Court addresses each element in turn.

***First***, Plaintiff fails to allege that she was eligible for FMLA leave. The FMLA covers employees who have worked for a covered employer for at least 12 months and for at least 1,250 hours during the previous 12-month period. 29 U.S.C. § 2611(2). Plaintiff states that she began working at Aria on October 12, 2021. ECF No. 6 at ¶ 16. She alleges that between October 2021 and March 2023, she requested to take FMLA leave twice but was denied each time. *Id.* at ¶ 21. But, according to Plaintiff, when she requested FMLA leave a third time, she was approved for Intermittent FMLA leave on April 13, 2023. *Id.* at ¶¶ 25–26. Although it appears that Plaintiff was eligible timewise when her third request was granted in April 2023, it is unclear whether she met the hours requirements. Plaintiff therefore fails to sufficiently plead the first element.[2]

***Second***, Plaintiff fails to allege that Aria is covered by the FMLA. The FMLA covers private-sector employers who employ 50 or more employees for at least 20 workweeks in the

---

[2] District courts within this Circuit have confirmed that employee eligibility and employer coverage must be alleged by specific factual contentions to plausibly state a claim for FMLA interference at the pleading stage. *See, e.g.*, *Craft v. Burris*, No. CV 16-166-BLG-TJC, 2017 WL 4891520, at *4 (D. Mont. Oct. 30, 2017); *Lee v. Delta Air Lines Inc.*, No. CV 20-8754-CBM-(JEMx), 2021 WL 4527955, at *10 n.23 (C.D. Cal. Aug. 23, 2021) (collecting cases).

5

current or preceding calendar year. 29 C.F.R. § 825.104(a). Because the FAC lacks any allegations regarding Aria's FMLA coverage, the second element too is insufficiently pled.

*Third*, assuming for the sake of argument that Plaintiff was FMLA eligible (*i.e.*, met the time and hours requirements), Plaintiff sufficiently pleads that she was entitled to FMLA leave. An employee is entitled to FMLA leave if she has "a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" includes a "physical [] condition" that involves "continuing treatment by a healthcare provider." *Id.* § 2611(11); 29 C.F.R. § 825.113. Plaintiff states that in June 2021, she was diagnosed with breast cancer that required her to take leave for treatment and cancer-related pain between October 2021 and March 2023. ECF No. 6 at ¶¶ 19, 22. Thus, Plaintiff plausibly alleges the third element.

*Fourth*, Plaintiff plausibly asserts that she provided Aria sufficient notice of her intent to take leave. FMLA regulations state that notice must be given at least 30 days in advance if the need for leave is foreseeable, or "as soon as practicable" otherwise. 29 C.F.R. § 825.302(a). But an "employee need not expressly assert rights under the FMLA or even mention the FMLA"; it is sufficient to simply "state that leave is needed." *Bachelder*, 259 F.3d at 1130 (quoting 29 C.F.R. § 825.302(c)). Thus, "employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply." *Id.* And Plaintiff sufficiently alleges that she did so here when—beginning in October 2021— she requested and took time off for cancer treatment as well as submitted medical documentation before she was approved for FMLA leave in April 2023. ECF No. 6 at ¶¶ 21–22, 24–25. The fourth element is therefore met.

*Fifth*, Plaintiff pleads enough facts to meet the final element: denial of rights. An employer "cannot use the taking of FMLA leave as a negative factor in employment actions," including failing to reinstate an employee after leave. *Bachelder*, 259 F.3d at 1122 (quoting 29 C.F.R. § 825.220(c)). Proximity in time may constitute circumstantial evidence that the leave was a negative factor in the employer's decision. *Xin Liu*, 347 F.3d at 1137. Plaintiff alleges that throughout October 2021 to March 2023, her managers accommodated her leave and attendance

1    requests so that she could receive cancer treatment. ECF No. 6 at ¶¶ 21–22. But later, Plaintiff
2    contends, when she was approved for and exercised FMLA leave on April 13, 2023, she was
3    fired weeks later on May 1, 2023 in "retaliation." *Id.* at ¶¶ 30, 32.
4          Defendants argue that Plaintiff fails to state a claim because she was placed under
5    investigation due to attendance *before* she took FMLA leave and was terminated because of non-
6    FMLA-related attendance violations. ECF No. 13 at 11–12. The FAC too states that Plaintiff was
7    placed on "Suspension Pending Investigation" shortly before she was approved for FMLA leave
8    and that the *cited* reason for her termination was attendance policy violations. ECF No. 6 at
9    ¶¶ 23, 31. However, at this juncture, the Court need only determine whether Plaintiff *plausibly*
10   alleges that her taking FMLA leave constituted a negative factor in Aria's decision to fire her.
11   And here, accepting the FAC's facts as true, the Court draws the reasonable inference that
12   because Plaintiff's managers previously accommodated her absences and Aria only fired her
13   after she exercised FMLA leave, taking leave was a negative factor in the decision to terminate
14   Plaintiff. Determining whether Aria *actually* fired Plaintiff for taking FMLA leave is not
15   appropriate at this stage.
16         Because the FAC does not set forth sufficient facts to meet the first two elements,
17   Plaintiff fails to state a claim for FMLA interference. As such, the Court recommends that the
18   first cause of action be dismissed. But given that Plaintiff could allege facts that would entitle her
19   to relief, the Court also recommends that Plaintiff be granted leave to amend her claim.[3]
20         **B. Claim 2: ADA Failure to Accommodate**
21         Plaintiff next asserts that Aria violated the ADA by failing to provide her with a
22   reasonable accommodation. ECF No. 6 at ¶¶ 40–46. The ADA treats the failure to provide a
23   reasonable accommodation as an act of discrimination. 42 U.S.C. § 12112(b)(5)(A) ("[T]he term

---

[3] Defendants argue in their Motion that certain periods of alleged misconduct are time-barred. ECF No. 13 at 11 n.4. However, an action under the FMLA must generally be brought within two years "after the date of *the last event constituting the alleged violation* for which the action is brought." 29 U.S.C. § 2617(c)(1) (emphasis added). Plaintiff alleges that Aria fired her on May 1, 2023 for taking FMLA leave, which is the last event constituting the alleged violation. *See* ECF No. 6 at ¶¶ 30, 32. Plaintiff filed her initial complaint on April 13, 2024—less than a year later—so her FMLA claim is timely filed.

28         7

'discriminate against a qualified individual on the basis of disability' includes—not making reasonable accommodations. . .”). To assert a prima facie case for discrimination under the ADA, Plaintiff must establish that (1) she is disabled within the meaning of the ADA, (2) she is a qualified individual, and (3) she suffered an adverse employment action because of her disability. *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003). As discussed below, Plaintiff plausibly alleges each element.

  ***First***, Plaintiff states sufficient facts to allege disability. The ADA defines a "disabled person" as an individual who has "a physical or mental impairment that substantially limits one or more of the individual's major life activities." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Plaintiff asserts that her breast cancer diagnosis required her to take absences from work for treatment and cancer-related pain for a period spanning 1.5 years. ECF No. 6 at ¶¶ 19, 22. Defendants too do not dispute that Plaintiff had a qualifying disability. ECF No. 21 at 5. The first element is therefore met.

  ***Second***, Plaintiff plausibly alleges that she was a qualified individual. A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff states that her disability predates her employment with Aria and that Aria knew of her diagnosis. ECF No. 6 at ¶¶ 16, 19–20. She also alleges she received positive manager feedback and HR reviews in her years working there. *Id.* at ¶¶ 18. So the Court can draw a reasonable inference that she was able to perform the essential functions of the job with or without reasonable accommodation as she had already done so for years. *Larkin v. Univ. Med. Ctr. of S. Nevada*, No. 2:22-cv-2146-JCM-VCF, 2023 WL 5353400, at *3 (D. Nev. Aug. 21, 2023) (reasonable inference can be drawn that employee is qualified individual where disability predated employment).

  The Ninth Circuit has also recognized that unpaid medical leave—even an extended medical leave, or an extension of an existing leave period—may be a reasonable accommodation if it does not pose an undue hardship on the employer. *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d

1243, 1247 (9th Cir. 1999). And "[o]nce an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations" that will enable the employee to perform her job duties. *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Because Plaintiff alleges that Aria knew about her cancer diagnosis and that she could have done her job with the reasonable accommodation of leave to attend doctors' appointments, Plaintiff has satisfied her burden at the pleading stage. The burden now shifts to Defendants to show that this accommodation would have been an undue hardship to Aria. *Id.* at 1133.

Defendants' argument that Aria did not fail to provide a reasonable accommodation to Plaintiff because she herself admits that her managers "accommodated" her absences for cancer treatment is unpersuasive. *See* ECF No. 13 at 14. Though Plaintiff states her managers "accommodated" her absences in the sense that she was allowed to attend treatment, she also alleges—and Defendants themselves confirm—that Aria's stated reason for firing her was these very absences. ECF Nos. 6 at ¶¶ 22, 29–31; 13 at 12. Such allowances cannot be a reasonable accommodation if the leave then constitutes attendance policy violations for which the employee can be terminated. Thus, the second element is sufficiently pled.

***Third***, Plaintiff plausibly alleges that she suffered an adverse employment action because of her disability. "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Humphrey*, 239 F.3d at 1140. And here, Plaintiff states that Aria knew about her cancer diagnosis, she received positive performance reviews during that time period, she could have performed her job with the reasonable accommodation of taking leave for cancer treatment, and Aria fired her for disability-related absences. ECF No. 6 at ¶¶ 18, 20, 29–31, 42–44. This is sufficient to meet the third element.

Having alleged sufficient facts for all three elements, Plaintiff states a plausible claim for

9

failure to accommodate under the ADA. The Court recommends that Defendants' Motion be denied in part and that Plaintiff's second cause of action be allowed to proceed.

### C. Claim 3: NRS § 613.330

In her third cause of action, Plaintiff alleges violations of NRS 613.330, Nevada's employment practices statute, and titles her claim "Discrimination and Retaliation." ECF No. 6 at ¶¶ 47–50. Though Plaintiff uses the term "retaliation" in the claim's title, she does not allege that Defendants retaliated against her for opposing an unlawful employment practice or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing. *See* NEV. REV. STAT. § 614.340(1). Instead, she alleges that she was fired due to her disability after she was told by her managers that she could take absences for cancer treatment, but such absences later counted as attendance policy violations. ECF No. 6 at ¶¶ 19, 22, 32. Plaintiff therefore brings a claim for discrimination, not retaliation. *See Bullard v. Las Vegas Valley Water Dist.*, No. 2:15-cv-00948-JAD-VCF, 2018 WL 715358, at *3–5 (D. Nev. Feb. 5, 2018).

NRS 613.330 "is a codified, state-law amalgam" of federal statutory schemes, including the ADA. *Id.* at *4. Thus, a claim for disability discrimination under NRS 613.330 is evaluated using the same standard as a claim for disability discrimination under the ADA. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). Because Plaintiff states a plausible claim for disability discrimination under the ADA based on Defendants' alleged failure to accommodate, she states a claim for disability discrimination under state law as well. As such, the Court recommends denying Defendants' Motion as to Plaintiff's third cause of action.

### D. Claim 4: NIED

Plaintiff's fourth claim is for NIED. ECF No. 6 at ¶¶ 51–55. Defendants move for dismissal of Plaintiff's fourth and fifth causes of action because they contend those are preempted by state statutes. ECF No. 13 at 16–17. They also argue that even if Plaintiff's NIED claim is not preempted, it fails to state a claim. *Id.* at 18–19. The Court first analyzes the issue of preemption and then discusses whether Plaintiff fails to state a claim.

### *1. Preemption*

Defendants assert that Plaintiff's common law tort claims are preempted by state statutes that serve as the "exclusive remedy" for employment claims and injuries that occurred at work. ECF No. 13 at 16–17. First, Defendants argue that Plaintiff's fourth and fifth claims are barred by NRS 613.330. Next, Defendants contend that such claims are preempted by the Nevada Industrial Insurance Act. The Court addresses each argument, in turn, below.

i.  NRS § 613.330

Defendants assert that it is "well-settled" that NRS 613.330 provides the "exclusive remedy" for claims based on unlawful employment practices. ECF No. 13 at 16. According to Defendants, because all common law tort claims based on employment discrimination are remedied by NRS 613.330, the statute preempts Plaintiff's NIED and Negligent Hiring, Retention, and Supervision claims. *Id.* (citing *Brinkman v. Harrah's Operating Co., Inc.*, No. 2:08-cv-00817-RCJ-PAL, 2008 WL 11389180, at *3 (D. Nev. Oct. 16, 2008)). However, Defendants conflate NRS 613.330's bar of a common law *tortious discharge* claim with a bar of *all* common law tort claims.

Under Nevada law, employees are presumed to be employed "at-will." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 884–85 (Nev. 1999). The at-will rule gives an employer the right to discharge an employee for any reason, or for no reason at all. *Id.* However, the Nevada Supreme Court has recognized an exception to this general rule where an employer terminates an employee in a manner that violates public policy. *Id.* In such a case, the terminated employee may bring a common law cause of action for tortious discharge. *Id.*

But the Nevada Supreme Court has declined to recognize tortious discharge claims where a "comprehensive statutory remedy" exists. *Shoen v. Amerco*, 896 P.2d 469, 475 (Nev. 1995); *Sands Regent v. Valgardson*, 777 P.2d 900, 901 (Nev. 1989). For example, in *Sands Regent*, the court refused to recognize a tortious discharge claim for age discrimination because it found that the Legislature had already addressed Nevada's public policy against age discrimination when it defined the extent of the remedy available in NRS 613.310, Nevada's anti-discrimination statute.

777 P.2d at 901. Because the plaintiff could recover adequate damages for his termination under NRS 613.330, the court held that his tortious discharge claim was precluded by the statute. *Id.*

"Although the Nevada Supreme Court has addressed the issue of statutory preclusion of tortious discharge in violation of public policy, the court has not directly addressed the issue of the anti-discrimination statute's preclusion of other common law tort claims." *Pasinger v. Starbucks Corp.*, No. 3:07-cv-00452-BES-VPC, 2008 WL 11399722, at *4 (D. Nev. Sept. 30, 2008) (internal citations omitted). But "[i]n *Shoen*, the Nevada Supreme Court implied that other common law tort claims may stand even though a claim for tortious discharge arising from the same incident is precluded by the existence of a statutory remedy." *Id.* (citing 896 P.2d at 476–77). Thus, Courts in this District have found that the Nevada Supreme Court "has barred *only tortious discharge claims, and no other tort claims*, when adequate anti-discrimination statutory remedies exist." *Heegel v. Nev. Prop. 1 LLC*, No. 2:20-cv-00001-APG-BNW, 2020 U.S. Dist. LEXIS 222997, *5 (D. Nev. Nov. 25, 2020) (emphasis added); *see also Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1173 (D. Nev. 2016) (same); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 (9th Cir. 2011) ("Nevada courts will not construe a statute as eliminating a common law cause of action unless the statute unambiguously requires that result.").

This interpretation is consistent with this Court's previous finding that the case Defendants quote for the proposition that all common law tort claims are preempted, *Brinkman*, 2008 WL 11389180, at *3, "cites no authority for [the proposition] (and the Court has not located any either)." *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2020 WL 8513790, at *4 n.5 (D. Nev. Dec. 9, 2020). This Court further noted that, "at least in this context, this rule appears inconsistent with Nevada Supreme Court cases discussing NRS 613.330 and the text of the statute itself." *Id.* For these reasons, the Court rejects Defendants' argument that NRS 613.330 bars Plaintiff's fourth and fifth claims.

    ii.  NIIA

Defendants argue that the NIIA, the Nevada workers' compensation statute, also bars Plaintiff's common law tort claims because her alleged injuries are based on conduct that

12

occurred during her employment. ECF No. 13 at 18. As with NRS 613.330, Plaintiff maintains that her claims are not preempted. ECF No. 20 at 5–6.

The NIIA governs workers' compensation benefits. *See Richards v. Republic Silver State Disposal, Inc.*, 148 P.3d 684, 687 (Nev. 2006) ("The NIIA's reciprocal terms generally require employers to provide workers' compensation coverage to their industrially injured employees and then immunize those employers from any suit brought on account of those injuries."). "The exclusive remedy provision of the NIIA provides that '[t]he rights and remedies. . . for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive.'" *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 839 (Nev. 2000) (quoting NEV. REV. STAT. § 616A.020(1)).

An "injury" is defined as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence." *Id.* § 616A.265(1). The statute defines "accident" as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." *Id.* § 616A.030.

Plaintiff's NIED and Negligent Hiring, Retention, and Supervision claims are based on allegations that Defendants interfered with Plaintiff's FMLA protections and failed to reasonably accommodate her disability. ECF No. 6 at ¶¶ 51–61. Thus, Plaintiff's purported harms "were neither sudden nor a tangible traumatic event that produced an immediate or prompt result established by medical evidence," so Plaintiff did not suffer an "injury by accident" during the course of employment. *Colvin v. M.J. Dean Constr., Inc.*, No. 2:20-cv-01765-APG-EJY, 2021 WL 1680196, at *3 (D. Nev. Apr. 7, 2021) (conduct constituting alleged employment discrimination did not fall under NIIA bar); *Holcomb v. Model T Casino Resort LLC*, No. 3:22-cv-00094-MMD-CSD, 2024 WL 1619362, at *3 (D. Nev. Mar. 20, 2024) (same). As such, the Court also rejects Defendants' argument that the NIIA bars Plaintiff's common law tort claims.

### 2. Failure to State a Claim

Defendants contend that even if Plaintiff's NIED cause of action is not preempted, she fails to allege sufficient facts to state a plausible claim. ECF No. 13 at 18–19. Defendants first argue that NIED claims can only be brought by bystanders, not direct victims. *Id.* at 18. Alternatively, they assert that Plaintiff's claim fails because an allegedly discriminatory termination does not amount to extreme and outrageous conduct in and of itself. *Id.* at 19.

Defendants are mistaken on the law regarding direct victims. Nevada recognizes "an NIED claim by a direct victim," which "has the same elements as an intentional infliction of emotional distress claim, except that the plaintiff need only show that the acts causing distress were committed negligently." *Armstrong v. Reynolds*, 22 F.4th 1058, 1081 (9th Cir. 2022) (citing *Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020)). To state an IIED or NIED claim, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress," (2) the plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981). For NIED claims brought for negligent actions committed directly against a plaintiff, "either a physical impact must have occurred or. . . proof of serious emotional distress causing physical injury or illness must be presented." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (internal quotations omitted). Thus, Defendants are correct that Plaintiff's stated facts fall short of meeting these elements.

***First***, the FAC lacks allegations rising to the level of extreme and outrageous conduct. To be extreme and outrageous, conduct must be "outside all possible bounds of decency" and regarded as "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations and citation omitted). And as Defendants point out, a purportedly discriminatory termination, on its own, does not clear that bar. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) ("termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct"); *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (acts based on "normal

employment relations" fall short of extreme and outrageous conduct). Because Plaintiff simply states that Defendants fired her for taking manager-accommodated absences and FMLA leave, ECF No. 6 at ¶ 53, she fails to plausibly allege the first element.

*Second*, Plaintiff does not sufficiently allege severe emotional distress. General physical or emotional discomfort is insufficient to demonstrate severe emotional distress—a plaintiff must allege such "serious emotional distress" that it "results in physical symptoms." *Chowdhry v. NLVH Inc.*, 851 P.2d 459, 482 (Nev. 1993). But here, Plaintiff only vaguely states that she has suffered a "worsening of her overall mental and physical condition." ECF No. 6 at ¶ 54. These are precisely the sorts of allegations that fall short of severe emotional distress, so this element too fails.

*Third*, Plaintiff plausibly pleads actual or proximate causation. She alleges that Defendants knew about her diagnosis, allowed her to miss work for treatment, and granted her FMLA leave only to fire her weeks later for absences that she believed were excused. *Id.* at ¶ 53. This, she claims, caused her to suffer "serious emotional distress" and worsened her mental and physical condition. *Id.* at ¶ 54. The third element is therefore satisfied.

*Fourth*, the FAC lacks well-pled factual allegations of "physical impact" or "physical injury or illness." Because physical manifestations must occur to state a direct-victim NIED claim, Plaintiff fails to meet this additional requirement.

Due to these shortfalls, the Court recommends dismissal of Plaintiff's fourth cause of action. But because it is not clear that amendment would be futile, the Court recommends permitting Plaintiff leave to amend.

### E.  Claim 5: Negligent Hiring, Retention, and Supervision

Plaintiff's final claim is titled "Negligent Hiring, Retention, and Supervision." ECF No. 6 at ¶¶ 56–61. As discussed above, this common law tort claim is not preempted by state statutes. *See supra* § D.1. But Defendants assert, nonetheless, that Plaintiff fails to state a claim. ECF No. 13 at 20–21.

Despite Plaintiff's naming convention, "Nevada courts recognize two separate torts—one

for negligent hiring and another for negligent training, supervision, and retention—but not one that merges them together." *Sanchez v. Albertson's LLC*, No. 2:19-cv-02017-JAD-DJA, 2022 WL 2982926, at *2 (D. Nev. July 27, 2022) (citing *Vaughan v. Harrah's Las Vegas, Inc.*, 238 P.3d 863 (Nev. 2008)). Negligent hiring "imposes a general duty on an employer to conduct a reasonable background check on a potential employee to ensure that" he or she is suitable for the position. *Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750, 789 (Nev. 1991) (citation omitted). Because the FAC makes no mention of background checks, the Court will interpret this claim as one for negligent training, supervision, and retention. *See Sanchez*, 2022 WL 2982926, at *2.

The elements of a negligent training, supervision, and retention claim are (1) a general duty on the employer to use reasonable care in the training, supervision, and retention of employees to ensure that they are fit for their positions, (2) breach, (3) injury, and (4) causation. *Id.* (citations omitted). Plaintiff fails to allege sufficient facts to meet all the elements.

*First*, Nevada recognizes that an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). Thus, the first element is met.

*Second*, Plaintiff does not plausibly allege breach. To prevail on a negligent training, supervision, and retention claim, a plaintiff must allege facts specifically indicating how the employer violated its duty. *Colquhoun v. BHC Montevista Hospital, Inc.*, No. 2:10-cv-00144-RLH-PAL, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010). The fact that an employee acts wrongfully or negligently does not in and of itself give rise to such a claim, as there must also be evidence that the employer was negligent in ensuring their fitness for the position. *Id.*; *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750, 751 (Nev. 1999). Because Plaintiff makes no factual allegations regarding Aria's training—or lack thereof—of her managers, the second element fails. *See Haro v. KRM, Inc.*, No. 2:20-cv-02113-APG-DJA, 2022 WL 980249, at *7 (D. Nev. Mar. 30, 2022).

*Third*, Plaintiff sufficiently states an injury. She alleges that because of her termination,

she suffered loss of income and employment benefits as well as emotional distress. ECF No. 6 at ¶¶ 54, 60. Thus, the third element is satisfied.

***Fourth***, Plaintiff fails to plausibly plead causation. Though she broadly asserts that Aria and her supervisors failed to make proper FMLA and ADA arrangements for her, it is unclear from Plaintiff's allegations whether such decisions were made by Aria, her employer, or her managers, Aria's employees. *See id.* at ¶ 59. Because of these factual deficiencies, it is not clear whether the responsible person was an employee and if so, whether that employee had been negligently supervised and trained. Without such allegations, the Court cannot discern whether Aria's training (or lack thereof) was the cause of Plaintiff's termination. *Sanchez*, 2022 WL 2982926, at *3. Thus, causation is insufficiently pled.

Having failed to satisfy the elements, the Court recommends granting Defendants' Motion in part and dismissing Plaintiff's fifth claim. But as with Plaintiff's other causes of action, the Court recommends providing her leave to amend to potentially cure these deficiencies.

### F. Punitive Damages

Lastly, Defendants seek to "dismiss" Plaintiff's prayer for punitive damages because they contend that she has not pled sufficient facts under Nevada law or the ADA and because such damages are not available under the FMLA. ECF No. 13 at 21–22. Plaintiff asserts that she sufficiently pleads punitive damages under Nevada law because she states that Defendants' conduct is "intentional" and "willful." ECF No. 20 at 7.

"Punitive damages are a remedy, not a claim, but a plaintiff must still plead the facts to support an award of punitive damages to maintain a prayer for them" in her complaint. *Bonavito v. Nevada Prop. 1 LLC*, No. 2:13-cv-417-JAD-CWH, 2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014). The Court "dismisses" claims but "strikes" impertinent allegations and requests for a remedy. *Frank v. City of Henderson*, No. 2:12-cv-01988-JAD, 2015 WL 5562582, at *3 n.35 (D. Nev. Sept. 21, 2015). So if Plaintiff does not sufficiently plead punitive damages, the Court will strike—rather than dismiss—Plaintiff's prayer for said damages.

1    Defendants are correct that punitive damages are not recoverable under the FMLA. *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008). NRS 613.330 too does not authorize an award of punitive damages. *Sternquist v. Humble Hearts LLC*, No. 2:19-cv-00448-JAD-BNW, 2021 WL 3134902, at *4 (D. Nev. July 23, 2021). And although punitive damages are available for Plaintiff's ADA and Nevada tort claims, she fails to allege sufficient facts entitling her to such relief.

While punitive damages can be awarded in failure-to-accommodate cases under the ADA, 42 U.S.C. § 1981a(a)(1), a plaintiff must demonstrate that the employer engaged in a discriminatory practice "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Id.* § 1981a(b)(1). The terms "malice" or "reckless indifference" pertain to an employer's knowledge that it may be acting in violation of federal law. *Kolstad v. ADA*, 527 U.S. 526, 535 (1999). And here, the FAC lacks any allegations regarding Defendants' knowledge of its alleged violations, so Plaintiff has not pled sufficient facts for punitive damages under the ADA.

As to Plaintiff's Nevada tort claims—NIED and Negligent Hiring, Retention, and Supervision—punitive damages are only available for torts involving oppression, fraud, or malice. NEV. REV. STAT. § 42.005. Nevada law defines malice as conduct "intended to injure a person or despicable conduct [that] is engaged in with a conscious disregard of the rights or safety of others." *Id.* § 42.001(3). Plaintiff fails to allege these requisite facts. She does nothing more than include terms like "willful," "wanton," and "malicious" with no explanation as to how Defendants' acts were done with the intent to injure her or how they rise to the level of "despicable conduct." ECF No. 6 at ¶ 34. This is insufficient for punitive damages. *Bonavito*, 2014 WL 1347051, at *1.

Because Plaintiff fails to set forth sufficient facts under either statutory scheme, the Court recommends striking the allegations referencing punitive damages. *See* ECF No. 6 at 28 ¶ 4. However, the Court also recommends that Plaintiff be given leave to amend her punitive damages remedy as she could plead additional facts that entitle her to such relief.

### G. Pro Bono Program Referral

After the parties participated in an Early Neutral Evaluation, Plaintiff's counsel withdrew from the case. ECF No. 26. Plaintiff has proceeded pro se since the withdrawal. *See, e.g.*, ECF Nos. 28, 31–32, 34. Because the Court believes this case would benefit from the appointment of pro bono counsel, it refers the case to the Pro Bono Program adopted in General Order 2019-07. Given the Court's recommendation that Plaintiff be granted leave to amend her claims, the Court also recommends that the case be stayed pending appointment of pro bono counsel.

## IV. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 13) be **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER RECOMMENDED** that Defendant MGM Resorts International be **DISMISSED with prejudice**.

**IT IS FURTHER RECOMMENDED** that Claims 1, 4, and 5 be **DISMISSED with leave to amend**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's prayer for punitive damages be **STRICKEN with leave to amend**.

**IT IS FURTHER ORDERED** that this case is referred to the Federal Pro Bono Program.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to forward this Order and Report and Recommendation to the Pro Bono Liaison.

**IT IS FURTHER RECOMMENDED** that this case be stayed pending appointment of pro bono counsel.

### NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

1  objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d
2  1153, 1157 (9th Cir. 1991).

4        DATED this 7th day of February 2025.

                                          BRENDA WEKSLER
                                          UNITED STATES MAGISTRATE JUDGE